MANCHESTER BOARD & PAPER COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 54423.   Promulgated October 12, 1933.

*Henry C. Riely, Esq.*, for the petitioner.
*James K. Polk, Esq.*, for the respondent.

## OPINION.

MURDOCK: The question in this case is to determine whether all, some part, or none of the $58,000 received by the petitioner in 1928 for the cancellation of its lease, was gain or profit and properly a part of gross income subject to tax. The Commissioner claims that the entire amount was gain, since there was no basis to be subtracted from the amount received. The petitioner contends that it is entitled to deduct from the proceeds as a basis the March 1, 1913, value of its rights under the renewal of the lease then in effect. There was opinion evidence of value on March 1, 1913, introduced by both parties and we know of the sale in 1910. But we agree with the respondent that that evidence is immaterial in the decision of the case. Consequently, we have made no finding of fact on the question of value.

Section 111 of the Revenue Act of 1928 provides that the gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the basis provided in section 113, and the loss shall be the excess of such basis over the amount realized. The parties agree that this section applies. Section 113 provides that the basis for determining gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property. It also provides that the basis for property acquired before March 1, 1913, shall be the cost, or fair market value of such property as of March 1, 1913, whichever is greater. The petitioner does not contend that the property for which it received $58,000 had any cost at any time. It argues only for the use of the March 1, 1913, value as a basis. Thus it becomes

important to determine whether the property disposed of was acquired before or after March 1, 1913.

The petitioner contends that the lease had a value to it on March 1, 1913, over and above the amount of the annual rental which it was required to pay. We will assume that this was true. It is also true that the lessor could never refuse to renew the lease. However, the evidence does not show the separate value of the renewal privilege nor of the right in the lessee to require the lessor to take and pay for its plant in case a renewal failed because of a demand for an increase in rent. *Bonwit Teller & Co.* v. *Commissioner*, 53 Fed. (2d) 381, certiorari denied, 284 U.S. 690. We do not know that these privileges had any value. They gave the lessee no undue advantage over the lessor in dealing for a renewal at an increased rental. They merely tended to prevent a demand for an excessive rental, not to restrict the lessor to less than a fair rental. Furthermore, the plant value was apparently not great enough to make this provision a very heavy restraint upon the lessor.

We do not agree with the petitioner that the award of the board of arbitration indicates value in the lease as of any other date. In our opinion the value of the lease to the lessee fluctuated, depending upon changing economic conditions and the unexpired portion of the current 15-year period. At times the lease may have been more favorable to the lessor than to the lessee. We are not bound by all of the findings of the board of arbitration, which, we are told by counsel for the petitioner, consisted of three engineers. We do not know what evidence was before that board, what prompted it to find as it did, nor what was the meaning, purpose, or effect of some of its findings. We have been told of the lease and the various renewals and must reach our own conclusions as to the effect of these agreements.

The March 1, 1913, value was due principally, if not entirely, to the then excess of present worth of the annual benefits to the lessee over the amount which it had to pay to the lessor. This value resulted from then existing economic conditions which made the rental, as fixed by the renewal agreement then in effect, favorable to the lessee. The value on March 1, 1913, which was due to these causes would have completely disappeared by October 1, 1923, the end of the period covered by the renewal agreement in effect on March 1, 1913, and would have been returned tax-free through annual deductions for exhaustion of the leasehold. Cf. *Bonwit Teller & Co.* v. *Commissioner, supra; 353 Lexington Ave. Corp.*, 27 B.T.A. 762; sec. 111 (b) (2), Revenue Act of 1928. When the period of 15 years covered by the current renewal agreement had expired, the parties would either let the lease lapse or deal for a new lease. The lessor would be expected to demand what its property was worth as a

rental for the next period. Neither the original lease nor the renewal agreement which had just expired would have any money value to either party at that time, so far as this record shows. Any valuable rights or property which the lessee had in the leased premises after October 1, 1923, did not carry over from the prior agreements. If the lessee had refused to renew on October 1, 1923, because of the lessor's demand for an increase in rent, there would have been a settlement under the agreement then in effect. The lessee would have received nothing for its lease and only the fair value of its plant. But there was a new agreement entered into on that date and the prior agreements became ineffective. This new agreement adopted most of the provisions of the original lease, but it was nevertheless a completely new contract resulting from arm's length dealing between the parties. The lessor was not under compulsion to lease for any less than a fair rental. If, as the settlement in 1928 may indicate, the petitioner, as lessee, had valuable property rights under the lease after October 1, 1923, that value was an incident of the renewal agreement. It must have been primarily due to an excess of value in the annual privileges of the lessee over the annual rental of $4,000. The value depended upon economic conditions existing at the time as of which it was determined. The value and the rights were also dependent upon and secured to the petitioner by the renewal agreement of October 1, 1923. They could not have been anticipated nor could they have antedated that agreement. We have not been shown that anything which was disposed of by the petitioner in 1928 for the $58,000 was in existence or valuable on March 1, 1913. The renewal cost the petitioner nothing. The $58,000 was clear gain. The petitioner's property under the renewal agreement had a basis of zero for gain or loss upon sale or disposition.

*Decision will be entered under Rule 50.*